# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **L.G., B.G., A.G., and H.G.**

**No. 21-1035** (Monongalia County 20-JA-66, 20-JA-67, 20-JA-68, and 20-JA-69)

## MEMORANDUM DECISION

Petitioner Father J.G., by counsel Elizabeth B. Warnick, appeals the Circuit Court of Monongalia County's December 3, 2021, order terminating his parental rights to L.G., B.G., A.G., and H.G.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Tiffany L. Kent, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent and denying him the assistance of counsel during the adjudicatory hearing.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed an abuse and neglect petition against petitioner in March of 2020. The DHHR alleged that, on February 21, 2020, the mother and petitioner were pulled over in a traffic stop, during which it was discovered that the license plate on their car was stolen. During the stop, officers located marijuana on petitioner's person and methamphetamine in the mother's purse, but

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner's counsel sought leave for petitioner to file a supplemental brief as a self-represented litigant in accordance with Rule 10(c)(10)(b) of the West Virginia Rules of Appellate Procedure. The Court granted petitioner leave to file a self-represented supplemental brief on January 13, 2022, and petitioner filed his supplemental brief on February 16, 2022.

neither appeared to be under the influence. Petitioner was arrested due to the stolen license plate, possession of marijuana, and an outstanding warrant for embezzlement.[3] At least two of the children were in the vehicle at the time of the arrest.

On February 26, 2020, a Child Protective Services ("CPS") worker visited petitioner's home. According to the petition, petitioner denied abusing drugs, but the mother admitted to abusing methamphetamine. At that time, the CPS worker implemented a temporary protection plan, wherein the parents agreed to submit to drug screens and participate in services. The worker instructed the parents to submit to a drug screen the next day. On February 27, 2020, neither parent appeared to submit to a drug screen, and that evening, the CPS worker returned to the home. The petition indicated that petitioner was absent but that the mother admitted that she and petitioner had abused methamphetamine together that morning. The mother further indicated that she abused the substance as frequently as every other day. Law enforcement officers and the CPS worker performed a search of the home and found a white powdery substance on a nightstand in the parents' room next to where the children were sitting. The following day, the mother submitted to a drug screen which was positive for methamphetamine and amphetamine. Petitioner did not submit to a screen. The parents waived their preliminary hearing.

After several continuances, the court held an adjudicatory hearing in August of 2020. Petitioner failed to attend, but his counsel appeared on his behalf. Petitioner's counsel moved the circuit court to permit her to withdraw as petitioner's counsel. Counsel stated that, shortly before the start of the hearing, petitioner texted her to express that he did not want to move forward with her representation and wished to speak to another attorney. Counsel stated that she believed there had been a breakdown in communication and stated she could not represent petitioner that day. However, because petitioner had notice of the hearing and failed to appear to request new counsel or communicate that there had been a breakdown in communication with his counsel, the court denied the motion and proceeded to hear evidence.

The DHHR presented the testimony of the investigating CPS worker, who stated that she visited petitioner's home following his arrest. The worker testified that, during her initial visit, petitioner admitted to having been arrested and admitted to using controlled substances the day of the worker's visit. The mother also admitted to having knowledge that petitioner abused drugs. The worker stated that, given the concerns of drug abuse, a temporary protection plan was implemented but that neither parent submitted to a drug screen the following day as requested. According to the worker, she returned to the home and noted that both parents were present and that the mother admitted that both she and petitioner had abused methamphetamine that morning. The worker also testified that she observed a white powdery substance on the parents' nightstand. Lastly, the CPS worker testified that petitioner never submitted to a drug screen or reached out to the DHHR prior to the petition's filing.

At the conclusion of the hearing, the court adjudicated petitioner as an abusing parent. The court noted that the mother's disclosure that she and petitioner abused drugs in the home and petitioner's failure to comply with the temporary protection plan were "very strong evidence of

---

[3]It does not appear that petitioner was ever charged with possession of marijuana.

what was going on." The court also noted that petitioner failed to submit to a drug screen and the circuit court presumed the missed test to be positive.

Subsequent to the adjudicatory hearing, petitioner's counsel filed a written motion to withdraw as counsel, and the court granted said motion and appointed petitioner new counsel. After her appointment, petitioner's counsel filed a motion to re-open adjudication to permit petitioner to testify in his defense. The court held a hearing in September of 2020 and addressed petitioner's motion to reopen adjudication. Counsel for petitioner proffered in support of the motion that petitioner "does admit to being an addict, but he doesn't feel like that status affects his ability to parent his children." The DHHR objected to the motion and noted that, immediately prior to the hearing, it requested that petitioner submit to a drug screen and that he "flat out [said] no." The DHHR further indicated that petitioner "has been noncompliant with all services." Ultimately, the court denied petitioner's motion to re-open adjudication. The court found that petitioner was aware of the hearing date and chose not to attend. Further, petitioner's counsel appeared on his behalf at the adjudicatory hearing, and his counsel was able to "ask questions and have a meaningful hearing on [petitioner's] behalf." At the conclusion of the hearing, petitioner was offered an improvement period and he declined. Following the hearing, petitioner submitted to a drug screen and tested positive for methamphetamine.

In November of 2020, petitioner requested a post-adjudicatory improvement period, and the court granted the same. The court held a review hearing in March of 2021. The DHHR advised the court that petitioner was noncompliant with services and continued to test positive for methamphetamine. Petitioner addressed the court and denied that he abused and neglected the children. Petitioner argued that he loved the children and that returning the children to his home would provide the motivation he needed to achieve sobriety. Petitioner denied that he needed inpatient treatment and, when asked what he needed to do better, he responded, "I love myself the way that I am." Nevertheless, the court extended petitioner's improvement period.

In June of 2021, the court held a final review hearing for petitioner's improvement period. Petitioner failed to appear, but his counsel appeared on his behalf and requested another extension to his improvement period. The DHHR objected to petitioner's motion and advised the court that petitioner continued to be noncompliant with services. Specifically, petitioner tested positive for methamphetamine in March of 2021 and thereafter failed to attend seven drug screens. The DHHR further indicated that petitioner yelled and cursed at the multidisciplinary team ("MDT") members during meetings. According to the DHHR, visits with the children were stopped due to the parents' inappropriate actions during the visits as they lied to the children and caused them to be mistrustful of their foster families, CPS workers, and therapists. The court denied petitioner's motion for an extension and set the matter for disposition.

The court held an initial dispositional hearing in July of 2021. Petitioner failed to appear but was represented by counsel. The DHHR presented the testimony of three service providers who testified as to the children's progress in therapy and the children's desires regarding petitioner's disposition. The court held a second dispositional hearing in August of 2021. Petitioner did not appear, but his counsel appeared on his behalf. The court noted that the guardian had filed a motion to withdraw, and the court continued the matter and appointed a new guardian for the children.

3

The court held the final dispositional hearing in November of 2021. Petitioner failed to appear, but his counsel appeared on his behalf. On behalf of the DHHR, a CPS worker recommended the termination of petitioner's parental rights to the children. The CPS worker testified that petitioner was noncooperative with services and that parenting and adult life skills classes were twice closed due to petitioner's noncompliance. Petitioner also failed to comply with counseling or participate in drug treatment. Indeed, petitioner last submitted to a drug screen in March of 2021, which was positive for methamphetamine and amphetamine, and thereafter ceased submitting to screens. Petitioner was also reportedly homeless as of September of 2021. The CPS worker acknowledged that petitioner participated in a parental fitness evaluation but stated that the evaluating psychologist opined that petitioner did not have the parental capacity to care, protect, and change in order to provide adequately for the children at that time.

After hearing testimony, the court found that petitioner came into the case with a "terrible attitude" and that, although he requested an improvement period, he failed to follow through with services. Further, the court found that petitioner failed to enter drug treatment; comply with drug screening; participate in therapy, parenting, and adult life skills classes; and obtain housing. The court noted petitioner had "never even shown the slightest bit of compliance with any of the services that were recommended." Given the foregoing, the court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. Petitioner appeals the circuit court's December 3, 2021, dispositional order.[4]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

---

[4]The mother's parental rights to the children were terminated below. The permanency plan for A.G. and H.G. is adoption in their foster home. L.G. and B.G. are currently receiving treatment for behavioral issues. The permanency plan for those children after their release from treatment is to complete an independent living program.

On appeal, petitioner, by counsel, raises two assignments of error regarding his adjudication. First, petitioner argues that he was effectively denied assistance of counsel during his adjudicatory hearing because his counsel requested to withdraw based on a breakdown in communication. Thereafter, petitioner was appointed new counsel, who moved the court to reopen adjudication, and that request was also denied. Accordingly, petitioner claims that he was not able to present a defense and that, had he been permitted to do so, the court "may have made a different finding at the Adjudicatory Hearing." Petitioner also avers that there was insufficient evidence upon which to adjudicate him as an abusing parent when the powdery substance on his nightstand was never tested and when he never tested positive for any substances prior to the petition's filing. Additionally, petitioner also claims that the DHHR's witness was not credible as her testimony contradicted the written petition.

Upon our review, we find no error in the circuit court's denial of the motion to withdraw. West Virginia Code § 49-4-601(f)(4) states, in relevant part, that

> [a] parent, guardian, custodian, or other person standing *in loco parentis* with the child who is alleged to have neglected or abused the child and who has not retained counsel and is financially unable to retain counsel beyond the initial hearing, shall be afforded appointed counsel at every stage of the proceedings.

Based upon our review of the record, it is clear that petitioner was represented at all stages of the proceedings below by appointed counsel. In its order denying the motion, the court found that petitioner failed to appear in person and, as such, was unable to inform the court as to why he wanted other appointed counsel. Accordingly, the Court finds that the circuit court did not err in denying counsel's motion to withdraw, as petitioner was afforded the representation that West Virginia Code § 49-4-601(f)(4) requires.

Additionally, petitioner simply does not demonstrate that the circuit court's denial of a motion to re-open adjudication was error. "On an appeal to this Court the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which he complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court." Syl. Pt. 2, *Perdue v. Coiner*, 156 W. Va. 467, 194 S.E.2d 657 (1973). First, petitioner fails to provide any proper legal authority to show that the circuit court's failure to reopen adjudication could constitute error. In any event, petitioner does not dispute that he received proper notice of the adjudicatory hearing, and the record shows that he was represented by counsel at the adjudicatory hearing and that his counsel had the opportunity to cross-examine witnesses and present witnesses. Lastly, petitioner's counsel proffered to the court when arguing in support of petitioner's motion to re-open adjudication that petitioner admitted that he was an addict but simply did not believe his addiction negatively impacted his ability to parent. Given the foregoing, we find that petitioner is entitled to no relief in this regard.

We further find that there was sufficient evidence upon which to adjudicate petitioner as an abusing parent. This Court has held that

> "[West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . .

5

. by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *In re F.S.*, 233 W. Va. 538, 546, 759 S.E.2d 769, 777 (2014) (citation omitted). "[T]he clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted).

Here, sufficient evidence existed to adjudicate petitioner as an abusing parent on the basis of substance abuse. While petitioner argues that the powdery substance was never tested and that he never tested positive for drugs prior to the petition's filing, the evidence presented below demonstrated that (1) petitioner was arrested during a traffic stop and marijuana was found on his person; (2) the mother informed the CPS worker that she and petitioner abused drugs together, and she tested positive for methamphetamine shortly thereafter; and (3) petitioner failed to comply with his temporary protection plan. While petitioner argues that, contrary to the CPS worker's testimony, he never disclosed substance abuse and was absent from the home on a date the CPS worker claimed he was there, we find that the evidence listed above was sufficient to support petitioner's adjudication despite any alleged inconsistencies. Accordingly, we find that the circuit court did not err in adjudicating petitioner as an abusing parent.

Petitioner also filed a self-represented brief wherein he raised approximately fourteen assignments of error.[5] However, we easily dispense with these claims. At least four assignments of error pertain to issues of adjudication that we have already addressed above. Petitioner also raises other assignments of error regarding alleged deficiencies during the preliminary hearing. The record demonstrates that petitioner waived his preliminary hearing and, as such, he has waived his right to challenge this issue on appeal. Petitioner raises at least two assignments of error regarding visitation with the children. To the extent petitioner claims that the circuit court somehow erred in denying him visitation with the children during the proceedings below, we find no error. The record demonstrates that petitioner completely failed to comply with drug screens during the last eight months of the proceedings and tested positive for methamphetamine on the few occasions he submitted to screens during the beginning of the case and, as such, was prohibited from visits with the children. We find no error in this regard.

Petitioner further argues that the circuit court erred by failing to protect the children from abuse during their first foster placement, that the first guardian failed to satisfactorily represent the children, and that the circuit court violated petitioner's "civil rights." However, petitioner failed to cite to the record demonstrating such alleged errors and further fails to demonstrate what remedy he seeks for alleged "errors" such as these. Indeed, in the argument section of his brief, petitioner

---

[5]Petitioner's assignments of error are not well-formatted and the numbering for at least one assignment of error is incorrect.

entirely fails to address to which civil rights he is referring. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that a petitioner's "brief must contain an argument exhibiting clearly the points of . . . law presented . . . and citing the authorities relied on" and that "[t]he argument must contain appropriate and specific citations to the record on appeal." In failing to comply with this rule, petitioner has failed to demonstrate that he is entitled to relief.

In another assignment of error, petitioner claims that the circuit court expressed bias towards him when it instructed him to submit to a psychological evaluation. However, in his argument, petitioner claims that the prosecutor informed the circuit court that she did not want to afford petitioner the opportunity to participate in a psychological evaluation because he "will just go in and persuade the doctor into saying he[']s a good dad." In any event, even assuming petitioner's claims are true, we fail to see how any error occurred when petitioner was, in fact, afforded a psychological evaluation and participated in the same. Accordingly, petitioner is entitled to no relief on this point.

Lastly, petitioner argues that the circuit court erred in terminating his parental rights rather than imposing disposition pursuant to West Virginia Code § 49-4-604(c)(5).[6] We disagree. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his or her] own or with help."

The record establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse or neglect on his own or with help. As noted above, petitioner was granted an improvement period but failed to comply with or complete any aspect of the same. Petitioner tested positive for methamphetamine during the first half of the proceedings and thereafter ceased submitting to screens altogether. Petitioner also failed to seek drug treatment and has maintained throughout the proceedings, as well as on appeal, that his substance abuse does not negatively impact his ability to parent. Petitioner further failed to comply with counseling and failed to obtain housing. Importantly, petitioner absented himself from the proceeding and failed to attend his adjudicatory hearing as well as the last three dispositional hearings. Accordingly, the circuit court found that there was no reasonable likelihood that petitioner would correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. We agree and find that these findings are sufficient to support the termination of petitioner's parental rights. We have held that

---

[6]West Virginia Code § 49-4-604(c)(5) provides:

Upon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given the evidence as set forth above, we find that the circuit court did not err in terminating petitioner's parental rights.

Finally, because two of the children have not yet achieved permanency, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the dispositional order. As this Court has stated,

[t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

[i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 3, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: May 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn

9